2025 IL App (2d) 240307-UB
No. 2-24-0307
Order filed August 11, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| GEORGE NAYDOL, as Successor Trustee of the Edward C. Naydol, Revocable Trust No. One Dated April 5, 2022, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-MR-195 |
| | ) | |
| ANNE HANSEN, BRADLEY SMITH, ABBIGAIL HANSEN, EDWARD HANSEN, And LILLIANA SMITH, | ) ) ) | Honorable |
| | ) | Joel D. Berg, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court erred when it declared a lease null and void due to lack of consideration. The judgment is reversed, and the cause is remanded for further proceedings consistent with this disposition.

¶ 2    Trustee brought suit against tenants of a house seeking possession, rent due, and declarations that the lease was null and void for lack of consideration and that the purported signature of the deceased was a forgery. After a bench trial, the court granted judgment in plaintiff's favor on all but the forgery count, declared the lease null and void, and granted

possession in favor plaintiff. Defendants appeal, arguing that the trial court erred when it 1) declared the lease null and void due to lack of consideration, 2) calculated rent based on the court's own determination of rental value instead of the rent indicated in the lease, 3) denied defendants' right to exercise the option to purchase the house, and 4) granted plaintiff possession. For the reasons that follow, we reverse, and remand.

¶ 3                               I. BACKGROUND

¶ 4     In early February 2022, defendants, Anne Hansen and her family, her husband Bradley Smith, and her children Edward, Abbigail and Lilliana Hansen (a minor), moved into a single-family home at 4612 Greenwood Road, Woodstock, Illinois (Greenwood property). Anne's uncle, Edward Naydol (Ed), owned the Greenwood property. On April 5, 2022, Ed signed a revocable living trust (trust), prepared by his attorney, Steven Cuda. Ed was the sole trustee and beneficiary of the trust. The Greenwood property was the main asset of the trust and was conveyed to the trust by a trustee's deed on April 7, 2022.

¶ 5     On April 8, 2022, Ed entered into a "Lease with Option to Purchase" (lease) with the defendants as the named tenants. Ed and defendants (except for Lilliana) signed the lease.

¶ 6     The lease provides, in relevant part:

     LEASE TERM: This Agreement shall be a fixed-period arrangement beginning on 04-01-2022 and ending on 06-30-2023 with the Tenant(s) having the option to continue to occupy the Premises under the same terms and conditions of this Agreement under a Month-to-Month arrangement (Tenancy at-Will) with either the Landlord or Tenant having the option to cancel the tenancy with at least thirty (30) days notice or the minimum time-period set by the State, whichever is shorter. ***

RENT: Tenant(s) shall pay the Landlord in equal monthly Installments of $400.00 (US Dollars) hereinafter known as the "Rent." The Rent will be due on the Thirtieth (30th) of every month starting August 2022 ***.

***

OPTION TO PURCHASE: The Tenant(s) shall have the right to purchase the Premises described herein for $150,000.00 at the end of the course of the Lease Term, along with any renewal periods or extensions, by providing written notice to the Landlord along with a deposit of $0 that is subject to the terms and conditions of a Purchase and Sale Agreement to be negotiated, in 'good faith', between the Landlord and Tenant(s).

***

UTILITIES: The Landlord agrees to pay for the following utilities and services: Air Conditioning (AC), Cable, Electricity, Heat, Internet, Natural Gas, Trash Removal, with all other utilities and services to be the responsibility of the Tenant(s).

***

ADDITIONAL TERMS AND CONDITIONS: In addition to the above stated terms and conditions of this Agreement, the Landlord and Tenant agree to the following: Rent Fee of $400.00 to start August 2022. Prior to August 2022, "rent" shall be in the form of repairs and maintenance as agreed by both parties.

Utilities are as follows:

Renter to pay any electricity amount over 150.00

Renter to pay any gas amount over 150.00

Renter to pay 50.00 for internet

Garbage and cable paid by landlord

Renter will pay 400.00 through June 30, 2023. If 4612 Greenwood Rd. is not put on the market by June 30, 2023, the tenant will have the option to buy the property from Edward Naydol for $150,000 as agreed upon by both parties. If the house is put on the market, a TBD amount no less than $100,000 from the sale of the house will be given to the tenant as a down payment on another property."

¶ 7    Ed passed away on May 28, 2022. The trust provided that Ed's assets were to be divided equally between (1) Ed's brother, plaintiff, (2) Ed's sister, Emily Lunkenheimer, and (3) Ed's niece, Anne. Plaintiff was the successor trustee.

¶ 8    In October 2022, defendants presented plaintiff a document entitled "Lease with Option to Purchase" (lease) that appeared to be signed by Ed and defendants (all but Lilliana).

¶ 9    On July 18, 2023, Steven Cuda, attorney for plaintiff, served a 30-day notice of termination of tenancy on defendants that provided: "You are hereby notified that I have elected to terminate your tenancy by virtue of which you now occupy as my tenant, the premises in the County of McHenry, and the State of Illinois, described as follows, to wit: 4612 Greenwood, Woodstock, Illinois." According to the notice, possession was to be delivered on August 31, 2023.

¶ 10    On July 24, 2023, Anne's attorney notified Cuda that she was invoking her option to purchase the Greenwood property for $150,000, pursuant to the lease and she attached a mortgage loan commitment.

¶ 11    In October 2023, plaintiff filed a three-count complaint against defendants for forcible entry and detainer/possession, declaratory judgment – lack of consideration for the lease agreement, and declaratory judgment – forgery. Defendants filed a motion to consolidate the present case with the probate case. On December 7, 2023, the trial court entered a default order, an order for possession, and declared the lease null and void. On defendants' motion, the trial court

vacated its default judgment. On January 11, 2024, the trial court denied defendants' motion to consolidate.

¶ 12     In January 2024 plaintiff filed a four-count amended complaint against defendants. In count I, titled "Forcible Entry and Detainer," plaintiff sought possession of the Greenwood property. In count II plaintiff sought a declaratory judgment that the lease agreement was "unconscionable, lacks consideration, and is null and void." Plaintiff alleged that the lease agreement rent was $400 per month but that the fair market value was $2,100 per month. The lease agreement also provided that defendants had an option to purchase the premises for $150,000 if the property was not put on the market by June 30, 2023, and if the house was put on the market "a TBD amount of no less than $100,000 from the sale of the house will be given to the tenants." The fair market value of the house was $271,000. At the time Ed purportedly signed the lease agreement, plaintiff alleged Ed was extremely ill, suffered from terminal cancer, and was subject to coercion by defendants.

¶ 13     In count III of the amended complaint plaintiff sought a declaratory judgment that Ed's signature on the lease was a forgery and, therefore, the lease was null and void. In count IV plaintiff sought rent due. Plaintiff alleged that defendants occupied the house from May 29, 2022, through January 31, 2024, and the fair market rent was $2,100 per month. Plaintiff sought judgment against defendants for $42,000. Plaintiff attached a copy of the lease to its complaint.

¶ 14     Defendants filed as affirmative defenses, 1) "Option to Purchase" as provided in the lease, and sought an order declaring the lease and the option to purchase provision valid and 2) "Rent Is Improper" because plaintiff failed to honor defendants' option to purchase, or if rent is to be ordered, it should be the lease amount of $400 per month.

¶ 15    The trial court heard testimony and considered exhibits on April 30, 2024. Notably, Cuda testified that he was Ed's attorney.[1] In early April 2022, Cuda prepared estate planning documents for Ed including a trust. On April 5, 2022, Ed signed the documents. Between February 16 and April 5, 2022, Cuda saw Ed four times and had numerous phone conversations with Ed. Ed wanted to change his estate plan to omit his sister Joanne Watkins (Anne's mother), and instead to evenly divide his estate between plaintiff, Emily, and Anne. Cuda testified that on April 5, 2022, Ed was mentally capable.

¶ 16    Bradley Smith, Anne's husband, testified that he and his family had lived in the Greenwood property since early February 2022 and they had never paid rent.

¶ 17    At the close of plaintiff's case, the court granted defendants' motion for a directed finding on plaintiff's forgery count (count III). The court stated, "you're not going to be able to prove a forgery based on what you presented thus far because I just have insufficient evidence that this is an utterly manufactured lease."

¶ 18    Defendants called realtor, Tammy Moore. Moore testified that between 2004 and 2005 she helped Ed buy the Greenwood property and sell the house he owned in Spring Grove, Illinois. Ed bought the Spring Grove property for his sister Joanne and her children, including Anne. In 2004 Ed bought the Greenwood property. In December 2021 Ed contacted Moore because he wanted to

---

[1] Although defendants did not move to disqualify Cuda who represented plaintiff prior to trial, we note that under the advocate-witness rule, generally, an attorney cannot act as both an advocate and a fact witness in the same case. *Demesa v. Adams*, 2013 IL App (1st) 122608, ¶ 43. The rule reflects the inconsistency between the role of an advocate and that of a witness. An advocate's role is to advance or argue the cause of another, while that of the witness is to state the facts objectively.

buy a home for Anne and her family. Ed sent Moore a mortgage pre-approval letter. Ed and Anne looked at 10 to 12 homes and made an offer on a home in Wonder Lake in January 2022. Moore also testified that she recently walked through the Greenwood property. There were issues with the septic system such that certain bathrooms were unusable.

¶ 19　　Anne testified that in 2022 Ed approached her to look for a house to buy. Moore was Anne and Ed's realtor. Anne and Ed looked at houses and filled out mortgage commitment papers. Then on January 31, 2022, Anne and her family (her husband and three children), moved into Ed's Greenwood property. The following day, Anne's mother, Joanne, moved out. The Greenwood property's septic tank backed up "all the time." To prevent this, Anne and her husband "rodded" out the lines at least one every two weeks. They also used Rid-X and have had the system pumped. Anne testified that plaintiff never made a demand for rent.

¶ 20　　The trial concluded on May 1, 2024. The trial court entered judgment in plaintiff's favor on the remaining three counts. The court found all the witnesses credible. Regarding count I, the court granted possession of Greenwood property in favor of plaintiff.

¶ 21　　Regarding count II, the court ruled that the lease was rescinded, and the contract was null and void due to a lack of consideration. The court determined that there was an offer, acceptance, the lease was signed by Ed, and it was a "fully executed contract." The trial court determined that the fact that Anne was not required to pay rent until August 2022 but was required to provide maintenance and repairs as agreed by the parties, was illusory consideration. Further, the court reasoned that there was no consideration to Ed because "[w]hen you add up what [Ed's] financial responsibilities are under this lease agreement, they exceed the rent being received." As stated, the court granted defendants' motion for a directed finding regarding count III alleging forgery. As to count IV – "Rent Due," – the court entered judgment in favor of plaintiff and against defendants,

including the minor, Lilliana, in the amount of $34,500 ($1,500 per month for 23 months). The trial court entered its judgment on May 1 and stayed the judgment until May 7, 2024.

¶ 22    On May 3, 2024, defendants filed a motion to reconsider and/or vacate. The trial court denied the motion on May 6, 2024. Subsequently, defendants were evicted from the Greenwood property. Defendants filed a timely notice of appeal.

¶ 23    In this appeal, we originally filed a Rule 23 order on March 14, 2025, wherein we reversed the trial court's judgment and remanded for further proceedings. Defendants filed a motion for a supervisory order in the Illinois Supreme Court which was "allowed in part." *Hansen v. Naydol*, No. 131784 (Ill. June 2, 2025) (supervisory order). Pursuant to the Illinois Supreme Court's supervisory order, we recalled our original mandate and now modify this order "to clarify whether, in light of [our] judgment, the defendants are entitled to possession of the Greenwood property." *Id.* Because we reverse the trial court's judgment for the reasons that follow, defendants are entitled to possession of the Greenwood property.

¶ 24                                    II. ANALYSIS

¶ 25    Defendants argue that the trial court erred when it declared the lease null and void due to lack of consideration to Ed. Plaintiff insists that Ed received no consideration because his financial obligations were greater than the rent defendants were obligated to pay. We disagree with plaintiff.

¶ 26    A lease is a contract, and we construe it accordingly. *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 620 (2007). The construction of a contract presents a question of law that we review *de novo. Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). A valid and enforceable contract requires offer, acceptance and consideration. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006).

¶ 27    Consideration consists of "the bargained-for exchange of promises or performances, and

may consist of a promise, an act or a forbearance." (Internal quotation marks omitted.) *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 23. Furthermore, " '[a]ny act or promise which is of benefit to one party or disadvantage to the other is sufficient consideration to support a contract.' " *Id.* (quoting *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 330 (1977)). Whether a contract contains consideration is a question of law that we review *de novo. Dohrmann v. Swaney*, 2014 IL App (1st) 131524, ¶ 23.

¶ 28     When construing a contract, the "objective is to determine and give effect to the intent of the parties *at the time they entered into the contract*." (Emphasis added.) *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067, ¶ 30. Therefore, the enforceability of the lease at issue here depends on whether, according to the terms of the lease, defendants suffered a detriment, or Ed received a benefit in exchange for defendants' promises. See *Carter*, 2012 IL 113204, ¶ 23.

¶ 29     Here, the lease required defendants to pay Ed $400 each month beginning in August 2022, and to pay for electricity and gas over $150, and $50 for internet. We note that there was no evidence regarding how much Ed paid for these services prior to the commencement of the lease term. The lease also provided that prior to August 2022, defendants were obligated to provide repairs and maintenance as agreed to by both the parties. The concept of legal consideration does not require the parties to an agreement to perform equal amounts of work or provide equal amounts of value. See *Carter,* 2012 IL 113204, ¶ 24. Clearly, defendants' promises, as well as their subsequent maintenance of the premises, benefited Ed and were detriments to defendants and, therefore, provided consideration for the lease. See *In re Marriage of Tabassum,* 377 Ill. App. 3d 761, 770 (2007) ("[a]n act or promise that benefits one party or is a detriment to the other party is consideration sufficient to support a contract").

¶ 30     Plaintiff also maintains and the trial court found that the lease was supported by an illusory

promise because defendants were not obligated to pay rent from February through August 2022, and until August 2022 rent would be in form of repairs and maintenance as agreed by the parties. The trial court reasoned that defendants' promise to perform repairs and maintenance "as agreed by the parties" was illusory "because what if the Defendants don't agree?"

¶ 31    An illusory promise appears to be a promise but on closer examination reveals that the promisor has not promised to do anything. *Carter,* 2012 IL 113204, ¶ 20. As such, an illusory promise is insufficient consideration to support a contract. *Keefe v. Allied Home Mortgage Corporation,* 393 Ill. App. 3d 226, 229-30 (2009).

¶ 32    Further, we construe the lease as a whole, viewing each provision in light of the other provisions. *Thompson v. Gordon,* 241 Ill. 2d 428, 441 (2011). The parties' intent is not determined by viewing a clause or provision in isolation, or by looking at detached portions of the contract. *Id.*

¶ 33    Here, the lease term began on April 1, 2022, but $400 rent was not due until August 30, 2022. From April 1, 2022, through August 30, 2022, "rent shall be in the form of repairs and maintenance as agreed by both parties." The trial court rescinded the lease because it determined this provision was an illusory obligation. But in construing the lease as a whole as we must (*id.*), it clearly obligated defendants to pay rent beginning in August 2022 and for certain utilities. These obligations were not optional. Nothing in lease indicates that defendants had discretion on *whether or not to* pay rent and utilities over the amounts listed. These promises were not illusory.

¶ 34    Generally, courts will not inquire into the adequacy of the consideration provided to support a contract. See *Academy Chicago Publishers*, 144 Ill. 2d at 24; see also Restatement (Second) of Contracts § 79 (1981) ("[i]f the requirement of consideration is met, there is no additional requirement of *** equivalence in the values exchanged"); *Gallagher,* 226 Ill. 2d at

243. "It is well established that the owner of property may sell it for very little, or give it away for nothing if he desires, and such conveyance cannot afterwards be set aside upon the basis, alone, of inadequacy or want of consideration." *Staude v. Heinlein*, 414 Ill. 11, 23 (1953). Where the parties to a contract agree freely and without fraud the adequacy of the consideration is within the exclusive dominion of the parties. *Carter*, 2012 IL 113204, ¶ 24. We note that defendants did not actually pay rent. However, plaintiff did not allege in his complaint nor argue on appeal that he was entitled to recission because defendants materially breached the lease when they failed to pay rent. Therefore, as previously stated, the issue was the parties' intent *at the time they entered into the lease.* See *Clanton*, 2023 IL 129067, ¶ 30.

¶ 35    In addition, plaintiff presented no evidence that Ed entered into the lease due to fraud, duress, or coercion, and the trial court expressly found that there was insufficient evidence of forgery. Accordingly, the trial court erred when it declared the lease invalid.

¶ 36    We hold that the trial court erred when it granted plaintiff relief on count II and found that the lease was null and void. We hold that the lease is a valid contract supported by adequate consideration. Because the lease was valid the trial court's judgment regarding counts I (possession), II (invalid lease), and count IV (rent due) is reversed.

¶ 37    Based on our holding that the lease was valid, the matter is remanded for the trial court to adjudicate whether defendants validly exercised their option to purchase for $150,000 or, if the Greenwood property was sold, whether defendants are entitled to receive $100,000 as provided in the lease. In accordance with the lease, rent due to plaintiff shall be calculated at $400 per month.

¶ 38    In addition, we clarify that in light of our reversal of the trial court's judgment regarding the forcible entry and detainer action (count I), the parties are in the same positions they were in prior to the entry of judgment. Therefore, defendants are entitled to possession of the Greenwood

property. See *Garley v. Columbia LaGrange Hospital*, 377 Ill. App. 3d 678, 682 (2007) (holding that a reversal abrogates a trial judgment and leaves the cause of action as it stood prior to its entry, restoring the parties to their original positions.).

¶ 39                                 III. CONCLUSION

¶ 40     For the reasons stated, the judgment of the circuit court of McHenry County is reversed and remanded for further proceedings with directions consistent with this disposition.

¶ 41     Reversed and remanded.